Good morning, Your Honors. Graham Archer for Appellant, Douglas York, and may I reserve two minutes for rebuttal? Thank you. Your Honors, at the core of this appeal is an effort by the defense to ensure that the jury of Mr. York's trial is charged with an instruction that enables them to differentiate between a prank call and an actual attempt to impersonate a federal employee. In this case, because the trial judge did not instruct as to the men's brand required to violate Section 912, Mr. York was denied his due process. Let me start by saying that the case lawyer is the best. I'm also the background case lawyer. But my understanding of it is that intent to defraud as such is not relevant at least. And so, that seems like a tough argument. You're also arguing for a materiality instruction, which might serve some of your purposes. Well, Your Honor, I'm in agreement with the court that other than the fact that intent to defraud is certainly not an element, Mr. York's argument here is that the intent to deceive is, in fact, an element. And that is the holding of Tumption McGill, in that it restricts the conduct that can be punished under this statute to, quote, a narrow range of conduct limited to intentionally deceptive acts. And so, I completely agree with you. So, is intent subjectively intentional? Or, I'm thinking it's a two-sided argument. Because there's a first amendment background here that needs to be taken into account. So, is intent what it usually means, i.e., subjectively, or does it mean an act that intends to make somebody do something? So, it's, I think the honest case as to the subjective intent for threats is instructive here, because what we're dealing with is a statute which is interestingly crafted. It does not include, it doesn't include a specific description of what the mens rea would be, but as a lot of schools, especially in cases that are dealing with speech, in a lot of the threats, the threat statute did not have any specific description of the required mens rea. And the Supreme Court held that it was, in fact, necessary. And I think that is exactly the situation that we're in now. I think it is a requirement that there be a subjective intent to deceive. And I don't think that's completely consistent with the Thompson-McGill matter, which was set in 2014. Let's assume there's problems with the construction of a license, prejudicial license, if harmless. It's not harmless, Your Honor. The defense certainly disagrees with the government's suggestion that the evidence in this case was uncontroverted. In fact, it was hotly contested in trial. The evidence in this case is, well, first, the standard seems regularly high for the government to reach, and it's their burden to show that this was harmless beyond a reasonable doubt. And in this case, we have a set of facts that could certainly be considered just for the purpose of annoying the victim in this case, as opposed to trying to deceive him into taking some other form of action. And so I think it's ... It seems like the evidence made it pretty clear that Mr. York wanted to make the IRS phone call appear authentic. Why else would he have gotten the supreme sort of technology to do that? And it seems like he wanted to cause Mr. Hassleflow to act in the way that you would think somebody would act if you didn't know it was a deceptive phone call by trying to get him to get the past tax returns together. It seems like he put a fake number and he did a lot of things here. He wasn't just calling the local grocery store and saying, hey, do you have ... Is your refrigerator running? I mean, there's a lot more to this. There's no question that it was in bad taste. There's no question that he did take some pains to perhaps make it particularly annoying. The call itself, a very short voicemail with a heavily altered voice and a fake callback number. I mean, I don't disagree with the Court. There's a perspective that it could be done for that purpose, but there's also certainly the perspective that it could be done just to annoy. For instance, it was sandwiched between, I believe, eight phone calls and voicemails that day prior. But also, if he was just trying to accomplish what he had been accomplishing, he just went to court, same thing. Obviously, it's something else in mind, which was something other than simply aggravating this guy. Aggravating him in a different way, which was making him at least momentarily think that the IRS was coming after him. But I don't think that that's our purview here. I think that that is for the consideration of the jury, and I certainly don't think that the government has proven beyond a reasonable doubt that no juror could, with the knowledge that it required it to deceive, view a different purpose. And understanding there may be different interpretations of this, but there is certainly an interpretation from the defense's perspective that it was not done to actually deceive. Mystery hasn't flowed into a course of conduct. Well, the question is, maybe not deceive him in the long run, but at least deceive him in the short run, which is essentially what happened. I mean, he at least was concerned enough about it to Google the phone call and Google a phone number to find out whether it was authentic. And you would say, well, if he actually called the phone number, he would have found out it wasn't authentic. But in either case, he was doing something in response to this call that he wasn't impersonating an IRS agent. I think all those actions, though, can be characterized as him putting together his evidence to get Mr. York in trouble for just this. And I think that something in the arise out of Mystery Hasn't Flowed, the recipient of the phone call, is not sufficient to support a conviction under 9-12. And I think that it's not harmless because a jury, in the context of the facts of their prior communications and subsequent communications, could interpret Mr. York's actions only to get a rise out of it. He thought that there was no intent requirement, but there was a materiality requirement, i.e., that it should have been told to the jury something, essentially the same thing, but on an objective rather than a subjective basis, i.e., something that would have made a reasonable person react. Wouldn't you have to say it would be harmless in his argument, then? Yes, Your Honor, and I think it's because it's not simply that they reacted in any way. It's that they react towards some course of conduct. And I think that it's certainly, from the jury's perspective, could be seen as Mr. Hasn't Flow being upset by receiving the phone call, but immediately suspecting Mr. York because of all of the rest of the context, and then engaging in his further investigation to put together the e-mail that he sent the next day to the TICTA agent to say, as he consistent conduct. I'm done, thank you. Okay. Thank you very much. Thanks, Your Honor. Thank you. Good morning, Your Honors. Jonas Lerman from the United States. This Court should affirm Mr. York's conviction that the evidence viewed in the light most likely to support the jury's guilty verdict, and the jury was correctly instructed on the two elements of Section 912 in accordance not just with this Court's model. What model does that mean? It means, as the Court said in Thompson-McGill, it means it requires only that the government show any overt act consistent with the assumed character. Those were the words of Thompson-McGill. Thompson-McGill also said that to respond to the First Amendment problem, which seems serious, that there was, that the statutory elements incorporate an intent to deceive. Right. Right. So our view is that the two elements identified in Thompson-McGill, falsely pretending to be an officer or employee, acting with the authority of the United States government, and two, acting as such, each of those elements incorporates that intent requirement that was identified in the overbreadth analysis. So on the first element, falsely pretending to be an officer or employee. It's certainly not self-evident at all that acting as an IRS agent incorporates an intent to deceive. Well, I think the jury is told that in this Court's model and structure. Right. That does. That's it. Well, may I start with the first element, falsely pretend? Because I think that's, Thompson-McGill said both elements incorporate this intent to defraud or intent to deceive requirement. But the first element, falsely pretending to be an employee or an officer acting under authority of the United States government, that word falsely, I think, is important. And the defense tried to gloss over it in their reply brief, but I think it's crucial here because it has to be read in conjunction with the words that it modifies. Right. So it modifies pretend. And if falsely meant nothing more than not actually, then falsely pretend would be redundant in that reading. That's what falsely usually means. It isn't true. It doesn't have any element of pretend. Well, but here it would mean the same thing as pretend. Falsely pretend would mean pretend to pretend. Right. And so I think it would be inconsistent with the rule against surplusage to write the word falsely out of it. And if you think of a hypothetical example. Do you think the jury is supposed to understand this? I think so. Because if you think of the way that we speak here. So you are now agreeing that there is an intent to deceive requirement here. Well, we agree with what this Court said in Tomshin-McGill, which is that, and this was the government's argument in Tomshin-McGill, is that that intent is incorporated into the two statutory elements. Yes. That's correct. I don't know if that intent to defraud is, I guess, defraud, deceive, or indifferent, or because what's the indictment and why it has to be proven are different, or what? In this, in Tomshin-McGill, this Court said that the statute reaches only intentionally deceptive conduct. That's the scope of the statute. And here, our position is that that's clear from the two statutory elements identified in Tomshin-McGill. And I would note that in Tomshin-McGill, right before the Court. That's why I think the case layer is so confusing. Because in another part of Tomshin-McGill, it says that 9-12 requires only that the government show any overt act consistent with the assumed character. Although the defendant must engage in acts that go beyond their bravado and sufficient that he falsely intended, assumed and protected, and had committed an act in keeping with the assumed character, that doesn't say anything about deceiving anybody. Right. I would note also that. Right. Yeah. So first they say you don't need it, and then they say you do need it. Well, I would agree with the Court that that case law is not a model of clarity, necessarily. But one thing I'd note that's critical here, if you're putting yourself in the shoes of Judge D'Avila here, proceeding over this trial, in the first part of Tomshin-McGill, where this Court talked about what the two elements of the statute are, it cited the model instruction. And if this Court had felt that the model instruction was so fatally flawed, as the defense is arguing here, I don't think the Court would have cited it. This Court has had issues with model instructions before without having caught it. And so let's just look at what's going on here. Sure. It seems like, and again, I think the person who was asking this, we seem to agree with the defendant that the second element of Section 912, the defendant acted as such, requires more than just an innocent act in furtherance of impersonation. Well, I think I can contact that. It seems like you're arguing. Yes. And you agree with that, that it's included in the falsely pretense part of the language. Is that right? I don't think that's exactly the government's position, no. I think the words used were an innocent act over an act in furtherance. I think if it's an act in furtherance of a false impersonation, by definition, it's not an innocent act. Well, so if somebody is, let's say, and they're impersonating an FBI agent, do they really act like an FBI agent? He just thinks an FBI agent would do what they do by the act. I mean, wouldn't a jury think that that person was acting as an FBI agent? No. Or falsely pretending to be one? No. No, because if you think of how we use these words in everyday speech. Well, I would. And if I were a juror, I'd be totally confused if nobody clarified it. Well, this jury wasn't confused. They deliberated for less than an hour, and they didn't send a single question out about that. That's completely circular. If there was nothing they meant, if they were told, it would have made a difference, but they weren't told, and that doesn't do anything. Well, again, I think they were told that it would make a difference because of, among other things, the instruction that they had to find the unreasonable doubt that he falsely pretended to be an officer or employee acting under the authority of the United States. Somebody sitting in a theater audience, they might say that person is doing an impression of an FBI agent. They might say that. But I don't think anybody in common speech would say, that person is falsely pretending to be an FBI agent. I don't think that's how we use those terms. And, again, the rule against surplus agent would write the word falsely out of the statute, I think. Is it correct that historically the statute did not contain the requirement that Congress took it out? Yes. The statute we are looking at does not contain that. Correct. So until 1948, the statute required intent to defraud. In 1948, Congress took that language out of the statute. And part of the reason I think the case law has been all over the place is that the different circuit courts haven't been in agreement about the consequences of Congress's actions. Yes. The reason, again, that Congress took it out was because Leptovich said that it wasn't, that it was not necessary to, well, the question of Leptovich was whether the particular, what was particularly alleged in the indictment was sufficient. And what was particularly alleged wouldn't really fit the term defraud in the usual sense because, and they said, well, that's sufficient. And so they took it out because Leptovich basically said intent to defraud. And the statute doesn't really mean exactly defraud. It means make somebody do something they wouldn't have otherwise done, but not necessarily to their monetary detriment. So that's why it came out. But it didn't come out on the theory that there wasn't any requirements, I understand. I think that's a fair characterization, right? Now, the D.C. Circuit, for example, has said that by taking out that element in 1948, Congress concluded that everybody who falsely pretends to be a federal officer and then acts as such doesn't tend, for the recipient, to act in a way they wouldn't have acted otherwise. The Guthrie decision from the Fourth Circuit, likewise, says that we have to give Congress's actions some effect. We can't pretend that words taken out of the statute remained in the statute. And this Court has consistently cited that Guthrie decision from the Fourth Circuit, including in Thompson-McGill. But as you point out, Thompson-McGill, it does say that there has to be detention to see the truth. Right. Well, again, that's in the overbreadth analysis. It's not in the part of the decision that addresses what the elements of the statute are. And here, again, in the section of the decision that articulates the two It not only cites the model instruction that was used in this case, but it articulates the elements, the same elements, that this jury was instructed on. It seems like I want to go over this left a little bit, because you seem to dispute that Section 912 requires a showing that someone was deceived into following a course of action he would not have pursued before the deceitful conduct. It seems like the Supreme Court of California has described this as an element of Section 912, or at least a limitation on the scope of 912. And although the statute issue, like which has been revised, the same limitation was acknowledged just a few years ago in U.S. v. Alvarez, wasn't it? Well, in dicta, yes. In a concurrent opinion. Right. In dicta, in a concurrent opinion, yes, it was. So, I mean, I guess if you think that this is an element or limitation on the type of conduct provided by Section 912, do you think the jury instruction adequately informed the jury on this? I do, because, again, I'm sure Miguel articulated what the two elements are. And one of those elements is that the person is to act in furtherance of the impersonation. The focus of this statute, and this is clear from a hundred years of case law, is not on the reaction or the mental state of the target of this false impersonation. On the materiality requirement for punishment in that context, that is, could one capture the actual limitation really through a materiality or an object of conduct or instruction that would provide a limitation, a first amendment receiving limitation, but wouldn't be a mens rea requirement as such, and therefore would deal with the fact, would not reflect the part of the statute that was taken out? I think that is captured in the acts of such element, actually, because, well, if somebody is not acting in a way that just has the potential of fooling someone, they wouldn't be acting as such, acting in furtherance of the false impersonation. So if we go back to the example of someone on stage, or of Alec Baldwin pretending to be Donald Trump on Saturday Night Live, he's not acting in furtherance of a false impersonation, he's acting in furtherance of a skit. The other hypothetical example, given by the defense, the child running around on the playground saying, I'm with the FBI, we know that the FBI does not send children to playgrounds to arrest other persons of a false impersonation. So I think that would address the concerns that you've raised. I think it's prescriptive in cutting off a lot of the jury. When you have serious first-man background problem here, which I think you do, and you're not going to articulate to the jury anything that caused that delineation, you're going to make them bleed into the question of act as such. But act, after all, an ordinary person would think often that acting is acting, like on a stage. So it's really not at all clear. Well, the defense vigorously made that argument to the jury in closing. So how did our children matter? Well, again, I don't think they expressed confusion about what they were required to find. And, you know, had they sent out a note saying, what if we think this is no different from the kid on the playground, can we still convict? We'd have a tougher case. But that didn't happen. Okay. I'm sorry. I'm sorry. Can you just quickly add to the harmless? Yes. Thank you, Judge Rubia. So we do think that this is absolutely harmless. Beyond a reasonable doubt here, no jury looking at these facts could conclude that Mr. York did not intentionally act in an intentionally deceptive way. He wouldn't have gone to all this trouble, as you alluded to. He used his credit card to set up this smooth card account. He elected to use different features of that application, digitally altering his voice, creating an IRS resembling phone number that ended in the last four digits of the actual IRS helpline number, creating this false persona, Judy Smith, referring to a tax on it, referring to three specific years. So, no, no jury confronted with that evidence could have found those votes. Thank you. And we'd ask you to confirm the conviction. Thank you. Thank you, Your Honors. I think the Court is spot on in the concern about the sufficiency of the case law. It's not where the rubber meets the road. It's where all of the case law, the statute, and the order it's drafted is set forth for the jury. And we're at the point in our briefing where we're arguing over which portions of last law definitions apply to different portions of the elements of the offense. I think we're too far afield at that point to say that the jury can possibly be instructed that they're not going to be, as the Court noted, no matter how much I hopped up and down during closing argument, complaining of hypothetical situations, that one could be convicted under this statute. The jury had no reason to ask, well, hey, doesn't this include. Well, maybe the reason they had no reason to ask was, I mean, in theory, he was guilty, but what you thought. That's an armistice problem. Understood. But I disagree with that. I don't think it's the purview of us at this stage to make that determination. It is. Well, it is our purview. I mean, in a sense, at some point, it's armistice. Understood. But I don't think that burden has been met by the government here because, one, it's not simply the transcript of this call. The voice in the call is extraordinarily altered to the extent that it sounds a little bit ridiculous listening to it from any perspective. And then when it's sandwiched in between these phone calls, it's appearing, I think, immediately to Mr. Heselfloh that this is more about the simplicity, but if they'd done it to me, I wouldn't have knocked over such a thing as simplicity. Understood. And those are all facts for the jury to consider. And that is exactly what we're asking the court to do, is to remand so that the jury has the opportunity to consider those facts. I don't see why the government should be afraid of having the jury clearly explain the actual elements and the mens rea of the offense. Okay. Thank you very much. Thank you. Thank you for your argument. An interesting case. United States v. York has submitted.
judges: Hawkins, Berzon, Murguia